IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROSCHEIM V. WILKERSON, :
:
    Plaintiff, : CIVIL NO. 4:09-CV-2539
:
v. : Hon. John E. Jones III
:
MS. SCHAFER, *et al.*, :
:
    Defendants. :

## **MEMORANDUM**

March 14, 2011

## **THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Plaintiff Roscheim V. Wilkerson ("Plaintiff" or "Wilkerson"), a former state inmate, initiated the above action *pro se* by filing a Complaint under the provisions of 42 U.S.C. § 1983. (Doc. 1.) Presently before the Court is a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of Defendants. (Doc. 15.) For the reasons set forth below, the Motion will be granted.

## **I. PROCEDURAL BACKGROUND**

Wilkerson filed his Complaint on December 28, 2009 while he was an inmate at the Huntingdon State Correctional Institution ("SCI Huntingdon") in Huntingdon, Pennsylvania. (Doc. 1.) He was released from the custody of the Pennsylvania Department of Corrections ("DOC") on parole on August 2, 2010. (*See* Docs. 22,

25.)

On February 1, 2010, before service of his Complaint was directed, Wilkerson filed a Motion requesting leave to amend his Complaint to add a request for injunctive relief in the form of a transfer to a different state facility. (Doc. 7.) By Order dated March 10, 2010, Wilkerson's Motion was granted to the extent that his request for injunctive relief was accepted as a Supplement to his Complaint, and service of the Complaint and Supplement on Defendants was directed. (Doc. 10.)

Defendants waived service of summons in this action (*see* Doc. 14), and thereafter, on May 5, 2010, the instant Motion to Dismiss (Doc. 15) was filed on their behalf. Defendants simultaneously filed a supporting brief (Doc. 16). Following a request for an extension of time, which was granted, on May 26, 2010, Wilkerson filed his opposition to the instant Motion. (Docs. 20, 21.)[1] Accordingly, the Motion is fully briefed and ripe for disposition.

## II. ALLEGATIONS OF COMPLAINT

Wilkerson's Complaint names the following SCI Huntingdon employees as

---

[1] Wilkerson filed two (2) separate opposition briefs. (Docs. 20, 21.) Inasmuch as the first document solely addresses Defendants' argument that Wilkerson has failed to state a due process claim because he has not alleged an atypical or significant hardship in relation to the ordinary incidents of prison life, and the second document includes additional argument on that issue and also addresses Defendants argument regarding Defendants Corbin, Fisher, Ciavarella, and Lawler, we have considered Documents 20 and 21 as if they had been filed as one opposition brief.

Defendants: Ryan Hengst, Correctional Officer; Charles Mitchell, Hearing Examiner; Brian Corbin, Deputy Warden; Jon Fisher, Deputy Warden; Raymond M. Lawler, Superintendent; Careen Shafer (misidentified as Ms. Schafer), Drug and Alcohol Specialist; and Michael Ciavarella, Drug and Alcohol Supervisor. (*See id.* at 1, 2 § III; Doc. 13, Notice of Appearance.)

Wilkerson alleges that, on August 28, 2009, he received misconduct number B153891 from Defendant Hengst charging him with lying to an employee, disobeying a direct order, refusing to work, and refusing to attend school or mandatory programs or encouraging others to do the same. (Doc. 1 at 2 § IV. ¶ 1.) He alleges that the misconduct was a "total falsehood." (*Id.* ¶ 2.) Wilkerson claims that the misconduct caused him to be denied a favorable recommendation by the SCI Huntingdon administration and "incompletion of a mandatory program that would have assured [him] a possibility of being reparoled and completing some beneficial programs that would [have] improved [his] skills once [he] was released." (*Id.* ¶ 3.) He avers that, once he was released from segregation, he still had to complete the parole violator's group, and he was denied parole. (*See id.*)

Wilkerson also alleges that, on September 1, 2009, Defendant Mitchell presided over a hearing on the misconduct charges. (*See id.*) He alleges that Mitchell

3

denied him his right to explain himself at the very beginning by interrupting him. (*Id.* at 2-3.)  He further alleges that Defendant Mitchell asked if he had a copy of the witness form, and Wilkerson responded that he was told by Defendant Hengst that he was to receive the witness form and a copy was to be given to Wilkerson at a later time.  (*Id.* at 3.)  Defendant Mitchell sentenced Wilkerson to thirty (30) days in the Restricted Housing Unit ("RHU").  (*Id.*)

Wilkerson alleges that he appealed Mitchell's decision to the Program Review Committee ("PRC"), consisting of Defendants Corbin, Fisher, and Ciavarella, and that the PRC upheld the decision without reviewing the camera footage pursuant to Wilkerson's request and without informing Wilkerson what evidence they found that made him guilty.  (*Id.*)  Wilkerson also alleges that he appealed further to Defendant Lawler, but that he also denied him due process by failing to review the camera footage.  (*Id.*)

As relief, Wilkerson seeks to have his classification status reinstated to where it was prior to the misconduct; a favorable recommendation along with being reparoled; monetary relief from all parties for their denial of his due process rights; and "no retaliation by the issuing officer or his co-workers or any ill treatment by staff at SCI Huntingdon".  (Doc. 1 at 4 § V.)  In addition, in the supplement to his Complaint,

4

Wilkerson seeks injunctive relief in the form of a transfer to a different state facility. (Doc. 7.)

## III. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal,* 129 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal,* a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly,* 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal,* 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the ... complaint-the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id* .

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly,* 127 S.Ct. 1964-65, 1969 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. DISCUSSION

Preliminarily, we observe that, Wilkerson has been released from DOC custody on parole. (*See* Docs. 22, 25.) It is well established that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese*, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). A prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief since he no longer is subject to the conditions he alleges are unconstitutional. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981 ("a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.") Because Wilkerson no longer is in DOC custody, his requests for injunctive relief in the form of a transfer to a different state institution, for the reinstatement of his classification status, for a favorable recommendation along with reparole, and to prevent retaliation by SCI Huntingdon staff all are moot. Thus, Wilkerson's only remaining request for relief is for monetary

7

damages for the alleged denial of his right to due process.

### A. Due Process Claim

Defendants argue that Wilkerson's claim that his right to due process has been violated should be dismissed because he has failed to allege an atypical or significant hardship in relation to the ordinary incidents of prison life under *Sandin v. Conner*, 515 U.S. 472, 484 (1995). (*See* Doc. 16, Dfts. Brief, at 3-5.) In opposing the instant Motion, Wilkerson argues that he has alleged an atypical or significant hardship because he was denied parole as a result of the misconduct and was unable to finish classes that would have helped his chances of getting substantial employment. (*See* Doc. 20, Pltf.'s Opposition Brief, at 1.) He also argues that he was deprived of the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974) in that, during the disciplinary hearing, Defendant Mitchell refused to call his witnesses and to review video camera footage (*see* Doc. 21, Pltf. Opposition Brief, at 3-4) and failed to provide a meaningful explanation of his finding of guilt (*see id.* at 5-6).

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." However, due process protection is not triggered unless there is a deprivation of a legally cognizable liberty interest. *See Sandin*, 515

U.S. at 484; *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003). In the context of inmate disciplinary proceedings, an inmate's procedural due process rights are not triggered unless the resulting sanction imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483. "[T]he baseline for determining what is 'atypical and significant' - the 'ordinary incidents of prison life' is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 486). Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Sandin*, 515 U.S. at 486. Moreover, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." *Griffin,* 112 F.3d at 709. It is only when it is determined that a liberty interest is at stake that an inmate is entitled to the procedural protections set forth in *Wolff*, including twenty-four hour notice of the charges prior to the hearing, an opportunity to call witnesses and to present documentary evidence, and a statement of the grounds for disciplinary action. *See Young v. Beard*, 227 Fed. Appx. 138, 141 (3d Cir. 2007).

In deciding whether a protected liberty interest exists under *Sandin*, a federal court considers the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell*, 318 F.3d at 532 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). In *Griffin*, the United States Court of Appeals for the Third Circuit held that "exposure to the conditions of administrative custody for periods as long as 15 months 'falls within the expected [perimeters] of the sentence imposed . . . by a court of law'", and thus does not deprive an inmate of a liberty interest such that he is entitled to procedural due process protection. *Griffin*, 112 F.3d at 708 (quoting *Sandin*, 515 U.S. at 485). In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court applied the *Sandin* test and determined that the inmates who brought that class action had a liberty interest in avoiding placement in a "supermax" (maximum-security) prison in Ohio where:

> almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room . . . [P]lacement . . . is indefinite and, after an initial 30 day review, is reviewed just annually . . . . [P]lacement disqualifies an otherwise eligible inmate for parole consideration.

545 U.S. at 210-11. The Court found that these harsh conditions "give rise to a liberty interest in their avoidance." *Id.* at 224. In contrast, in *Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002), the Court applied the *Sandin* test and found that avoiding

10

placement in the Security Threat Group Management Unit ("STGMU") in the New Jersey prison system is not a protected liberty interest. Inmates were placed in the STGMU when the prison deemed them to be members of groups that posed a security threat. *Fraise*, 283 F.3d at 509. "An inmate assigned to the STGMU remains in maximum custody until the inmate successfully completes a three-phase behavior modification program." *Id.* at 511. The Court found that, despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGMU. *Id.*; *see also Griffin*, 112 F.3d at 706.

In applying the above analytical framework here, we first consider that the duration of Wilkerson's in the RHU, thirty (30) days, is not significant enough to constitute an "atypical and significant" hardship so as to trigger due process protection. *See Sandin*, 515 U.S. at 486; *Griffin*, 112. F.3d at 706. However, our analysis does not end there. We also must consider the actual conditions of Wilkerson's confinement in the RHU in relation to other prison conditions. *See Mitchell*, 318 F.3d at 532 (citing *Shoats*, 213 F.3d at 144). Wilkerson's allegations in his Complaint relating to this consideration are that the misconduct resulted in his being denied a favorable recommendation by the SCI Huntingdon administration for parole and that he was unable to complete a class for parole violators during his time

11

in the RHU, and thus, upon his release from the RHU, his parole was denied. (*See* Doc. 1 at 2 IV. 3.) In addition, in opposing the instant Motion, Wilkerson identifies his denial of parole and his inability to finish several job skills classes as "atypical and significant" hardships that implicate a liberty interest. (*See* Doc. 20 at 1.)

In considering whether the conditions of Wilkerson's confinement in the RHU that he alleges contributed to the denial of parole implicate a liberty interest, it is helpful to consider the decision in *Wilkinson, supra*. In that case, among the conditions that the Court pointed to in concluding that an atypical and significant hardship existed so as to implicate a liberty interest was the fact that an inmate who was otherwise eligible for parole was disqualified from parole consideration as a result of placement into the Ohio supermax facility. *See Wilkinson*, 545 U.S. at 224. Specifically, upon placement into the supermax facility, inmates received a maximum security classification, and pursuant to an Ohio Department of Corrections policy, that classification prohibited them from being released on parole. *See id.* (citing *Austin v. Wilkinson*, 189 F. Supp. 2d 719, 728 (N.D. Oh. 2002)). As a result, no inmate placed in that facility could be paroled. *See Austin*, 189 F. Supp. 2d at 728.

In contrast, here, Wilkerson has not alleged that his placement into the RHU as a sanction resulted in his disqualification from parole consideration. Rather, he

12

alleges that the misconduct resulted in his not receiving a favorable recommendation from SCI Huntingdon staff for parole, and that his inability to finish required classes while he was in the RHU led to the denial of parole. Moreover, the *Wilkinson* Court did not rely solely on the fact that inmates in that case were disqualified from parole consideration in concluding that an atypical and significant hardship existed; rather, the Court reached its conclusion based on various conditions taken together. *See Wilkinson*, 545 U.S. at 224. Hence, even if Wilkerson alleged that he was disqualified from parole consideration as a result of his placement in the RHU, that circumstance in and of itself would be insufficient for us to find that a liberty interest is implicated in this situation.

Based on the foregoing, Wilkerson's allegations regarding his placement in the RHU as a sanction after being found guilty of misconduct fail to implicate a protected liberty interest, and therefore, he fails to state a due process claim upon which relief may be granted. As such, we need not examine Wilkerson's arguments relating to an alleged denial of the procedural protections set forth in *Woolf, supra*. *See Young,* 227 Fed. Appx. at 141.

### B.  Defendants Corbin, Fisher, Ciavarella, and Lawler

Defendants argue that the claims against Defendants Corbin, Fisher, Ciavarella,

13

and Lawler should be dismissed because their denial of Wilkerson's misconduct appeals does not form the basis for a constitutional violation. (*See* Doc. 16 at 5-6.) In response, Wilkerson argues that, while the aforementioned Defendants did not commit due process violations, they nevertheless are liable for them because they became aware of the violations that occurred in the course of his disciplinary proceedings in their capacity as supervisors reviewing his administrative appeals. (*See* Doc. 21 at 8-10.)

In *Iqbal, supra*, the Supreme Court observed that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. The Court further emphasized that "[i]n a § 1983 suit or a *Bivens* action- where masters do not answer for the torts of their servants- the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 1949. As such, to establish liability for the deprivation of a constitutional right, a plaintiff must demonstrate personal involvement by a defendant. *Rode v. Delarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Such involvement may be established through: 1) personal direction or actual

participation by the defendant in the misconduct; or 2) knowledge of and acquiescence in the misconduct. *Id.*

In considering Wilkerson's claim seeking to hold Defendants Corbin, Fisher, Ciavarella, and Lawler liable for their role in reviewing his appeals from his misconduct, we are mindful of the fact that inmates do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38 (1977); *Speight v. Sims*, 283 Fed. Appx. 880, 881 (3d Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")). Moreover, participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances. *See Rode*, 845 F.2d at 1208 (finding the filing of a grievance insufficient to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *Williams v. Lackawanna County* Prison, 2010 WL

15

1491132, at *5 (M.D. Pa. Apr. 13, 2010) (concluding that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right); *Croom v. Wagner*, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dept. of Corrections*, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

Based on the foregoing, Wilkerson's allegation that Defendants Corbin, Fisher, Ciavarella, and Lawler should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying alleged unconstitutional conduct. Therefore, we must dismiss Wilkerson's claims against these Defendants.

**C.  Defendant Shafer**

Defendants argue that Defendant Shafer should be dismissed from this action because the Complaint does not contain any allegations against her. As discussed,

*supra,* "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. *Id.* Because the Complaint contains no allegations against Shafer, Wilkerson fails to state a claim against her, and thus she will be dismissed as a Defendant to this action.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed on behalf of Defendants (Doc. 15) will be granted. In dismissing Wilkerson's Complaint, we are mindful of the fact that *pro se* pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative amended complaint even when they do not seek leave to do so, "unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

In the instant case, it is evident from our analysis herein that no amendment to

the facts concerning the duration and conditions of Wilkerson's RHU placement would enable him to state a due process claim upon which relief may be granted. The same is true of Wilkerson's allegations against Defendants Corbin, Fisher, Ciavarella and Lawler. Where he has admitted that these Defendants did not commit any violations of his right to due process (*see* Doc. 21 at 9), but seeks to hold them liable solely in their capacity as supervisors who reviewed his misconduct appeals, no amendment would allow him to state a claim against them upon which relief may be granted. Finally, as to Defendant Shafer, Wilkerson does not make any factual allegations against her in the Complaint, and he has not offered any opposition to Defendants' argument that she should be dismissed as a Defendant, and therefore, her dismissal as a party is appropriate. Based on the foregoing, we conclude that the dismissal of Wilkerson's Complaint with prejudice is appropriate. An Order consistent with this Memorandum will issue on today's date.